*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0682**

In Re: the Petition of K. S. O. and
M. A. O. to Adopt L. R. O.

**Filed October 6, 2014
Affirmed
Bjorkman, Judge**

Clay County District Court
File No. 14-FA-13-2372

Mark D. Fiddler, Fiddler Law Office, P.A., Minneapolis, Minnesota (for appellants K.S.O. and M.A.O.)

N.T., St. Cloud, Minnesota (pro se respondent)

John M. Jerabek, Tuft, Lach & Jerabek, PLLC, Maplewood, Minnesota (for amicus curiae)

Considered and decided by Smith, Presiding Judge; Larkin, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant-foster parents challenge the dismissal of their adoption petition, arguing that the district court erred by (1) ruling that the recognition of parentage (ROP) filed during the pendency of their adoption petition was valid and (2) failing to require mother,

who had not demanded the child's return within 60 days of placement in appellant's home, to consent to the adoption. We affirm.

## FACTS

A.L.-B. (mother) gave birth to the child J.S.L.[1] on April 30, 2013. Because mother was unmarried and in prison, and because appellants K.S.O. and M.A.O. had adopted mother's biological son several years earlier, mother agreed to have Lutheran Social Services of Minnesota (LSS) place the child with appellants, so they could "care for" the child as a "prospective adoptive family." LSS subsequently asked mother to execute a written consent to adoption; she declined to do so.

Mother was released from prison on July 1. Nine days later, she advised LSS that she wished to parent the child and would not consent to adoption. LSS contacted appellants that day and requested they return the child within 72 hours. Appellants instead filed a petition to adopt the child. They also moved for an ex parte order granting them temporary custody of the child, arguing that under Minn. Stat. § 259.47, subd. 8 (2012), mother was required to execute a written consent or demand the child's return within 60 days and her failure to do so required an investigation by human services to determine whether a termination-of-parental-rights petition should be commenced against mother on grounds of abandonment. The district court granted the ex parte order on July 15.

On July 23, mother and respondent N.T. signed and filed an ROP indicating that N.T. is the father of the child. The ROP also changed the child's legal name to J.S.T.

---

[1] Despite the caption of this appeal, these are the initials of the child's legal name at birth.

LSS subsequently moved the district court to vacate the ex parte order. The district court granted the motion, determining that Minn. Stat. § 259.47, subd. 8, is "not dispositive in defining the consent timelines for [mother]," and that mother consented only to appellants caring for the child but did not consent to adoption and did not abandon the child. The district court ordered that the child be returned to LSS, to coordinate the return of the child to mother, but it did not dismiss the adoption petition.

When the child was returned to mother on August 6, mother was using methamphetamine and intravenous oxycodone, and continued to do so while the child was in her custody. Human services learned of mother's drug use and filed a child-in-need-of-protection-or-services (CHIPS) petition on August 14. The child was removed from mother's custody and placed in foster care in appellants' home. Appellants subsequently obtained mother's written consent to adoption through another adoption agency, and sought to intervene in the CHIPS proceeding.

Appellants also filed a motion in the dormant adoption proceeding to consolidate that proceeding with the CHIPS proceeding[2] and for a determination that the ROP is invalid because it was filed during the pendency of the adoption proceeding. Mother died while the motion was pending. Father subsequently moved to dismiss the adoption petition.

After a hearing, the district court dismissed the adoption petition, reasoning that the court "should have dismissed [the adoption] matter" when it ordered the child

---

[2] The adoption proceeding was venued in Clay County. The CHIPS proceeding moved between Martin and Stearns Counties for several months because of confusion related to mother's and father's actual and expected residences.

returned to mother's custody on August 6, and that the child was "not eligible for adoption" because of the pending CHIPS proceeding.[3] The district court also rejected appellants' argument that the adoption proceeding precluded or invalidated the ROP. This appeal follows.

## D E C I S I O N

Appellants principally argue that the district court erred by ruling that the ROP is valid. But the district court dismissed the adoption petition because the child is not eligible for adoption, and appellants do not articulate how an invalid ROP would undermine that decision. A district court may dismiss an adoption petition on its own initiative if the petition fails to state a claim upon which relief may be granted. Minn. R. Adopt. P. 40.02. Such a dismissal is warranted if "it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded." *See Bahr v. Capella Univ.*, 788 N.W.2d 76, 80 (Minn. 2010) (discussing dismissal under Minn. R. Civ. P. 12.02(e) for failure to state a claim). We review de novo the legal sufficiency of a claim. *Id.* We also review de novo the interpretation of the adoption rules and statutes. *In re Adoption of C.H.*, 554 N.W.2d 737, 742 (Minn. 1996).

---

[3] The district court also noted that the proper placement of the child would be determined in the CHIPS proceeding. *See generally Stern v. Stern*, 839 N.W.2d 96 (Minn. App. 2013) (holding that juvenile court has original and exclusive jurisdiction over proceedings involving children alleged to be in need of protection or services). Appellants subsequently filed a motion in the adoption proceeding, seeking to stay the transfer of the child to father in the CHIPS proceeding. The district court denied the motion. Appellants then filed the notice of appeal in this case and sought a stay from this court. We denied the motion.

4

A child is eligible for adoption only if he or she has been placed in a prospective adoptive home, Minn. Stat. § 259.22, subd. 2 (2012); Minn. R. Adopt. P. 35.04, and the parents or legal substitute has consented to the adoption, Minn. Stat. § 259.24, subd. 1(a) (2012); Minn. R. Adopt. P. 33.01. These conditions were not met at any point during the pendency of appellants' petition. And appellants do not dispute that the child was not eligible for adoption after she was adjudicated CHIPS and placed in foster care. Because the relief appellants demanded in their petition was the adoption of a child who was not eligible for adoption, we conclude that the district court properly determined that they are not entitled to relief and dismissed the petition.

While this court's analysis could end here, we observe that if the ROP is valid, such that father is a legally recognized parent, his refusal to consent to the adoption further supports the district court's dismissal of the adoption petition. *See* Minn. Stat. § 259.24, subd. 1(a). Accordingly, we briefly address this issue.

Minnesota law provides that a "putative father" interested in a minor child who is, or is expected to be, the subject of an adoption proceeding may indicate his interest by registering with the Minnesota Fathers Adoption Registry (adoption registry). Minn. Stat. § 259.52, subd. 1(a) (2012). If he does not register within 30 days of the child's birth, he is "barred thereafter from bringing or maintaining an action to assert any interest in the child during the pending adoption proceeding concerning the child." *Id.*, subds. 7-8 (2012).

Appellants argue that Minn. Stat. § 259.52, subds. 7-8, precluded father from filing an ROP after they filed their adoption petition. We disagree. Unlike filing a

paternity action or even registering with the adoption registry, filing an ROP does not *assert* an interest in a child. It is a joint declaration with the mother that, with some exceptions inapplicable here, effectively "*determin[es]* the existence of the parent and child relationship." *See* Minn. Stat. § 257.75, subd. 3 (2012) (emphasis added). In short, the timing requirements of the adoption registry apply only to fathers whose assertion of an interest in a child could disrupt an otherwise valid adoption proceeding; they do not limit the ability of biological parents to jointly sign and file an ROP. *See Heidbreder v. Carton*, 645 N.W.2d 355, 364-65 (Minn. 2002) (highlighting concern about a father who was not legally recognized before the filing of an adoption proceeding unilaterally interfering with an adoption that the mother initiated, and discussing legislative changes to avoid that problem).

Finally, appellants argue that the district court erred by failing to require mother to consent to adoption when she did not demand the child's return within 60 days of placement, citing Minn. Stat. § 259.47, subd. 8, and Minn. R. Adopt. P. 33.05. As appellants acknowledge, mother's death precludes effectual relief on this issue and renders it moot. *See Kahn v. Griffin*, 701 N.W.2d 815, 821 (Minn. 2005) (explaining that if a court cannot grant effective relief, the matter is generally dismissed as moot). Appellants urge us to address the issue, asserting that the finality of adoption proceedings is an important public concern and this issue is capable of repetition, yet evading review. *See In re McCaskill*, 603 N.W.2d 326, 327 (Minn. 1999) (recognizing exception to mootness doctrine). We disagree. As our earlier discussion indicates, this case presents unique facts. Mother placed the child in appellants' care but did not consent to adoption

6

or otherwise relinquish her parental rights. She then demanded the child's return and signed the ROP with father. The child was returned to appellants' care only because of separate child-protection concerns. While we agree with appellants that finality in adoption proceedings is important, the circumstances that have prevented finality in this case go beyond the adoption process and are unlikely to recur. Accordingly, we decline to address the merits of this issue.

**Affirmed.**